Good morning, Your Honors. May it please the Court, P. Joseph Sandoval for the petitioner Roderick Lim Goh. I would like to reserve two minutes for rebuttal if I may. First, I'd like to bring the Court's attention to an issue. We were hired by Mr. Goh to represent his concerns before the Ninth Circuit Court of Appeals. Mr. Goh and his wife, Grace Tan Goh, became estranged during the course of their immigration proceedings, and they requested separate counsel. So Ms. Grace Tan Goh continued with the attorney that handled the appellate cases before the Board of Immigration Appeals, Mr. Burke, Robert G. Burke, and we filed a separate brief in this case. Mr. Burke's brief was filed October 18, 2006, it appears, and we later filed our brief in May of 2007. The Court later consolidated the cases, and the government responded in one brief, and I believe that we have only one docket number. I am not representing Ms. Grace Tan Goh or her interests. Could you keep your voice up, please? Yes. I was not hired, nor am I representing Ms. Grace Tan Goh, because of the conflict of interest between Ms. Goh and Mr. Roderick Goh, my client. This morning I was under the impression that Mr. Burke would be present today as well, but he has not been listed on the docket, and he's not in the courtroom today. My client, Mr. Roderick Goh, has not had any contact with his wife subsequent to their estrangement. And the last contact I had with Mr. Burke was probably roughly a year ago, and I understood at that time that he was going to continue to represent Ms. Goh's interests before this Court. So I have talked to government counsel regarding this issue. I'm not sure exactly how the Court wishes to proceed, but I think we'll proceed with the argument today. And the panel will have to discuss what, if anything, we want to do to make certain that the other counsel were properly notified. And if they were not, we may have subsequent proceedings of some sort. I don't know. We'll have to confer about that. But in the meantime, why don't you go ahead and argue the merits of the husband's petition? Yes. Thank you. Well, this case arises from the Executive Office for Immigration Review. This is a removal case in San Pedro, California. The immigration judge denied applications for asylum, withholding, and benefits under Article III of the Torture Convention. And the case was timely appealed to the Board of Immigration Appeals, and I refer to that as BIA No. 1. The Board of Immigration Appeals affirmed or sustained the immigration judge's findings with respect to asylum and withholding of removal. However, the Board of Immigration Appeals, in considering all of the evidence, they had determined that it was necessary to remand the case back down to the immigration judge for further consideration of the Convention Against Torture Claims based upon the evidence of record, including the country conditions in Philippines and the facts of Mr. Goh's case. Subsequent hearings were held in San Pedro, California, where Mr. Goh had submitted additional documentation, also the testimony of his criminal lawyer from the Philippines, whose testimony was excluded at the first hearing because the judge felt that it was too biased, given the fact that there was an attorney-client relationship between Mr. Goh and the lawyer. I have a question, and I'd appreciate having both counsel address. The claim in this case that causes me the most concern from the point of view of the decision that was made is the claim about torture. It seems to me that there's an unusual amount of evidence compared to most of the cases we see that there is a possibility of torture, and I wonder if you would go through that part of your case. Okay. Well, in BIA number two, it was a split panel, and the Board of Immigration Appeals Judge Juan Osuna filed a dissenting opinion, which we concur with that logic and reasoning. And we assert that the country conditions of the Philippines, which were very well laid out before the immigration judge and the Board of Immigration Appeals, had shown that torture within the system is extremely prevalent. And the witnesses that were presented by Mr. Goh confirmed that. One of them was a gentleman by the name of Joshua Cooper, who is a country specialist and has submitted documents to Amnesty International regarding the Philippines. Doesn't this case boil down to who the immigration judge believed? Well, credibility is certainly an issue. There were witnesses who were not attached necessarily to the case. They testified on each side of it. One said the fact was A. The other said the fact was the opposite, B. The immigration judge's job is to decide who he believes, who is more credible, and then makes a factual finding. With respect to the torture claim that Judge Graber had wanted specific questions regarding, credibility is not an issue when it comes to CAT analysis. Credibility is not an issue at all? I mean, you have to believe one or the other. You don't, if you're a fact finder, you have to decide which of two people you're going to give credit to. Well, the Ninth Circuit can still grant a convention against torture case even if the person applying for a convention against torture is deemed incredible. Well, the question here is slightly different because there were other witnesses who were not the petitioner who testified in contradiction to one another. And I guess in connection with this, maybe both counsel again could comment on the following. Ordinarily, if there is only the petitioner's credibility at issue, we require the agency to explain why they don't believe the petitioner, or at least pre the change in the law. In this instance, where clearly the BIA has disbelieved one set of witnesses and believed another, do they have to explain themselves in a similar fashion to explain why one set of evidence is not credible? Or can they just pick one? Well, if you're referring to the testimony presented by Joshua Cooper or Mr. Assis, the petitioner's counsel versus Cesar Tajan. Yeah, I know who you mean. Taj-a-lan-nig-eet, or I don't know how to pronounce it. But they don't explain why they think he's credible versus the other witnesses. Well, I think that it's important that if they are going to make a decision with respect to Cass, that they weigh the credibility of these witnesses. And certainly there was a bias, potentially, from the government's witness. And we addressed that in our brief to this Court, that the judge should not have given so much weight to this gentleman. He was formerly the prosecutor in the case. Now, earlier, the immigration judge denied Mr. Goh's right to have his witness testify in BIA 1. The Board of Immigration Appeals says, no, that's not permissible. But she apparently gave full faith and credits to the prosecutor. And in this case, it's particularly troubling because Mr. Goh is claiming that the prosecution in the Philippines was, in fact, persecution. It was a pretext to harm him. And it seems odd, at the very least, that the person that is the claimed persecutor would be able to send one of his agents to come and testify against a grant of Convention Against Torture Relief here in the United States. What's the test? The I.J. made a decision. We're not going to hear the evidence. The I.J. heard the evidence, made a decision as to where the facts are. What's our test in reviewing the I.J.? Well, abuse of discretion under the asylum standards, substantial evidence under withholding, and substantial evidence under Convention Against Torture as well. So under the cap under the cap is whether or not there's substantial evidence, that is, whether we feel compelled to come to a different conclusion. Yes, that's correct. Well, counsel, don't the statements of Mr. King and the admissions of Mr. Goh himself provide sufficient evidence that's legitimate prosecution here? In some context, perhaps it is. But you can't digest the you can't look at that without also considering what's occurring in the Philippines and what was presented to the Court with the country reports and also with the witness testimony. You know, perhaps in France or in England, these statements that were made may be sufficient. But in the very corrupt situation in the Philippines where my client alleges that this court proceeding in the Philippines was essentially a kangaroo court, and when you look at all of the record, that Mr. King's family had considerable influence over the judges and was and may in fact have been able to affect their decision, I think that you can't rest the entire case on statements made by either Mr. Goh or Mr. King. Thank you, counsel. You have exceeded your time, but we had those procedural things at the beginning and we'll give you rebuttal time. May it please the Court, I am Don G. Sproggin, on behalf of the United States Attorney General, in this case. The government believes that there is a single issue before this court, and that is whether the evidence is so overwhelming  that it compels reversal of the board's decisions in this case. Counsel, what's your response to my question about credibility findings that are required in order to reach a decision? When the petitioner's credibility is at issue, the board has to explain itself as to why it doesn't believe the petitioner. Is there or should there be any similar rule about the testimony of other people? In other words, we have definitely evidence on both sides, a split board decision. Does the majority have to explain why it disbelieves one set of witnesses and believes the other? Judge Graber, the government's position is that this is not an adverse credibility case. It is a matter of weight of the evidence, a common situation in which you have conflicting evidence, some arguing that there is, some credible evidence from country reports arguing that there are instances of torture in prison in the Philippines, and credible evidence from witnesses and documentary evidence on the other side. This is a matter of weighing, weight of evidence. This is not a green light, red light, adverse credibility situation. This is a burden of proof case. The first board decision made clear that while the immigration judge did find petitioners not credible, it was setting that aside. The entire examination of the board is on the burden of proof, not credibility. And in weighing the evidence of asylum and withholding, they found it not a close case. And indeed, the government's position is this is not a close case for asylum and withholding for either petitioner. For torture, and this is I think the heart of your question, there is conflicting evidence. The fact that there is conflicting evidence and the fact that the board went to such great lengths to examine that conflicting evidence, including a remand to hear more testimony and look at more documents, is confirmation of the fact that petitioners have not fulfilled their burden before this court. It's important to understand the different burden before the board. Before the Board of Immigration Appeals, this is a matter of preponderance of the evidence. It's a finely tuned tipping scale. And if, as Judge Osuna found, it narrowly, and those are his words, narrowly tips in favor of petitioners, and two other board members found that it tipped the other way, that is confirmation that petitioners before this court, which has a different standard of review, have not fulfilled their burden of proof to reject the board's decision. Before this court, the burden of proof of petitioners is not whether they narrowly made their case in a close case of conflicting evidence, but whether the evidence is so overwhelming that no reasonable adjudicator could fail to reject the board's decision. And the government's position is that Judge Osuna's very thoughtful dissent is confirmation of the fact that they have not shown an overwhelming rejection of the board's decision. It is a close case at best on their behalf. In that regard, I think it's helpful to look at the evidence regarding CAT, and I'll focus on that setting aside silent and withholding. The facts, this is precisely the reason that it is troubling that there is torture in prisons in the Philippines. However, the evidence shows that it's not a matter of whether necessarily you believe one side or the other as to the nature of that evidence. Petitioner's evidence is generalized evidence dealing with statistics  Well, there is some evidence, though, in the record that suggests that torture is more likely in the Philippine prisons in high-profile cases. There is some evidence of that, yes. There is. The question was what was the basis of that evidence. The basis of that evidence was Mr. Cooper, who had no knowledge of this particular case, was speaking in general. The other But torture claims are often generalized because they necessarily are a prediction of the likelihood that any individual would be subjected to torture. That's correct, Your Honor. So oftentimes the evidence is generic. That's correct, Your Honor. But in this case, the Court has the luxury of individualized and specific information that weighs to the contrary, and that is their own counsel, Mr. Aces, and the prosecutor in their case, Mr. Talat Langen, and pardon my pronunciation of his name, testified that these people have demonstrated specifically in their own individualized circumstances that they can avoid these circumstances. First, the charges have been dismissed against them. There are no pending charges. They may be restored, but they've been successful with their effective counsel in dismissing the charges. Second, they've never been detained. They have avoided detention by use of their counsel. That in itself is refutation of the notion that this legal proceeding in the Philippines is somehow a pretext. There is evidence that they are able to stand on their own and avoid problems in the context of the Philippine judicial system. Perhaps most telling is that Mr. Baratua, their co-defendant, and, again, I'm focusing on evidence that's specific and individualized to these petitioners. Mr. Baratua is very closely and similarly situated. He's charged with the same offenses. He's in the same prison, and there is unrebutted evidence in the record that he has not been harmed, he's not been tortured. That stands before the Court. So this is not so much a question of credibility of witnesses as it is a matter of the nature of the evidence, whether it's specific and individualized to these petitioners or whether it's more general in statistic. For example, Judge Mills, your question, I believe, talked about there is evidence of torture. There is evidence of rape, for example, for Grace, that she says that she fears being raped. However, that evidence, even their own counsel, Mr. Asis, says that it is his pro bono clients, people who are marginalized, poor, uneducated. These petitioners, the specific evidence regarding them is quite different. They are wealthy. They are influential. They have hired counsel that has demonstrated, not with speculation, but has demonstrated he can keep them out of detention and keep them out of having the charges dismissed. That is powerful evidence. And so in weighing the contradictory evidence, and the government acknowledges the evidence is contradictory, and the generalized evidence of torture is troubling, the specific evidence relevant to this case and to these petitioners demonstrates that they have effectively defended themselves, that the charges pending against them in the judicial system is not a pretext. It is a legitimate criminal prosecution. And that they cannot demonstrate the compelling evidence that is necessary before this court. A close case before the Board of Immigration Appeals, as Judge Osuna said, narrowly demonstrating at best that they have qualified for torture protection before the board, is insufficient. And that's the best they can do. That's the best they argue. And that is insufficient before this court, where the standard of review is that the evidence must be so overwhelming that it must compel rejection of the board's decision. Petitioners essentially ask this court to rule that the entire prison population of the nation of the Philippines qualifies for torture without any further inquiry, because there is generalized evidence admitted to be given some weight that there are incidences of torture. The government would contend that that ruling, that the entire prison population of the nation of the Philippines does not, qualifies for torture protection merely on the basis of their being in prison, is not the way that the law works. Well, it could if the evidence were there. I mean, there may be countries where everyone who goes to prison or 50 percent of them are horribly tortured. So I'm not really sure I understand your point. Is it that that could not be a finding or just that it isn't a finding in this case? We would say that it's not a finding in this case because the generalized evidence is here rebutted. It is, there is conflicting evidence. The evidence on the other side is that these specific petitioners have, there is evidence that they would not be tortured. Their prominence, there is evidence that shows that their prominence itself would protect them. The tajolanget says that he will keep an eye on them. There is unrebutted evidence that the government, the United States, will be watching. They have shown that with their own initiative, that their wealth and influence and their has canceled the charges. The only way they can be tortured is to put together a daisy chain of speculation. The charges must be reinstated. They must be removed to the Philippines. They must be detained. All of these things have never happened and that they must be tortured. The specific evidence relevant to these petitioners indicates that that is, as the board correctly found or reasonably found, less likely than not that they failed to subject their burden. Thank you. Mr. Sandoval, you may have some rebuttal. Thank you. I think it is extremely important for this Court to consider the credibility of the witnesses that testified, both for the government and both for Mr. Goh. And as Judge Asuna did before the Board of Immigration Appeals, when you're talking about the tipping point or when you're talking about it being a narrow case, that is taking into account that the government's witnesses may have provided testimony or evidence that was clearly not credible. And if you take away that testimony from both of the government witnesses that testified, it's not such a clear case anymore. You have witnesses testifying for Mr. Goh. You have country reports from Amnesty International, U.S. Department of State, and other. How do you take away the evidence? The evidence was before the Board. And there was a person there that was charged with deciding where the weight of the evidence lies. I don't understand your argument of just taking away that evidence. Aren't we in a position that we have to determine whether it's so compelling, the evidence opposed to it's so compelling, that a reasonable fact finder couldn't find in favor of the government's witnesses? Isn't that our burden? Yes, I would agree that it is. But when you look at the testimony presented by these two individuals and you look at their obvious bias and the weight that was given to these people by the immigration judge, we ask that the courts seriously consider whether or not the judge should have given these witnesses any weight. And when you look at the dissenting opinion that's been attached to our briefs, you read that first paragraph. The judge himself says that there was the confirmed such widespread use of torture and the definite, quote, likelihood that the respondents would face the same. And finally, the less convincing testimony of DHS witnesses, Reynaldo Esmeralda and Cesar Panjanglit. In this case, I think, Judge Graber, your point is very well taken. I think that it's important to this case that the case is not so close if the immigration judge had not given weight to witnesses that were not credible. Thank you, counsel. Thank you. The case just argued is submitted, and we appreciate the helpful arguments from both counsel. And we will look into the procedural issue that you raised. The next case on the calendar is United States v. Park.
judges: Mills, Wallace, Graber